ALBERT C. HANNA *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—07—3548

---

Opinion filed March 6, 2009.

Thomas J. Ramsdell & Associates, of Chicago (Thomas J. Ramsdell, Anthony S. Hind, and Carl E. Myers, of counsel), for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiffs Albert C. Hanna (Hanna) and Carol C. Mrowka (Mrowka) (collectively, plaintiffs), filed a 20-count complaint against the City of Chicago, the Commission on Chicago Landmarks, and several city officials (collectively, the City), alleging that the Chicago Landmarks Ordinance (the Ordinance) (Chicago Municipal Code §§2—120—580 to 2—120—920) was invalid on its face and as it applied to plaintiffs' respective properties. The City moved to dismiss counts I, II, III, and V through XX, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)), alleging that plaintiffs failed to state a cause of action. The trial court granted the City's section 2—615 motion to dismiss pursuant to counts V through XX, and counts I, II, and III. Plaintiffs now appeal.

# I. BACKGROUND

## A. Complaint

In their first amended complaint, plaintiffs alleged that Hanna owned property in the Arlington Deming neighborhood in Lincoln Park. On October 5, 2006, the Commission on Chicago Landmarks (Commission) recommended that area as a Landmark District.[1] Mrowka owned property in the East Village neighborhood. Pursuant to the Commission's recommendations, the Chicago city council designated the East Village as a Landmark District on January 11, 2006.

We will only discuss the counts pertinent to this appeal. In count I, plaintiffs alleged that the Ordinance was facially vague in violation of article IV, section 2, of the Illinois Constitution. Count II challenged the delegation of authority to the Commission. Count III alleged that section 2—120—705 of the Ordinance violates article IV, section 1, of the Illinois Constitution on its face for allowing the Commission to exercise legislative power. In counts V through XX, plaintiffs claimed that the Ordinance is facially, and as applied to their properties, unconstitutional.

## B. Ordinance

The Chicago Landmark Ordinance is comprised of sections 2—120—580 to 2—120—920 (Chicago Municipal Code §§2—120—580 to 2—120—920). It establishes a commission to engage in various activities to protect and encourage the continued utilization of areas, districts, buildings, and structures in Chicago, eligible for designation by the Ordinance as a Chicago landmark.

Section 2—120—600 states that Commission members shall be selected from professionals in the disciplines of history, architecture, historic architecture, planning, archaeology, real estate, historic preservation, or related fields, or shall be persons who have demonstrated special interest, knowledge, or experience in architecture, history, neighborhood preservation, or related disciplines.

Section 2—120—610 provides for the powers and duties the Commission shall or may have. Section 2—120—610(6) states that the Commission may exercise the power to advise and assist owners of potential or designated landmarks on technical and financial aspects of preservation, renovation, and rehabilitation, and to establish standards and guidelines therefore.

Section 2—120—620 provides for the seven criteria the Commis-

---

[1]The Arlington-Deming District was subsequently designated a Landmark District.

sion should use in considering a designation. Those seven criteria are characterized as (1) critical part of the City's heritage, (2) significant historic event, (3) significant person, (4) important architecture, (5) important architect, (6) distinctive theme as a district, and (7) unique visual feature.

Section 2—120—630 provides that the Commission, in making the preliminary recommendation, must use at least two of the seven criteria and consider whether there is a significant historic, community, architectural, or aesthetic interest or value. It also provides for notice of preliminary recommendation to the owner of the property and to the alderman of the ward.

Section 2—120—640 provides for the Commission to obtain a report for the commissioner of planning and development evaluating the relationship of the proposed designation to the comprehensive plan of the City. The section also provides that the Commission may proceed without such report.

Section 2—120—650 provides for a process for the owner to consent to the designation. It states that notice to the owner shall provide the reasons for and the effects of the designation. If the owner does not consent, a public hearing is to be held, pursuant to the notice procedures delineated in section 2—120—670. If a hearing is held, the hearing must comply with the procedures in section 2—120—680.

Section 2—120—690 governs the Commission's recommendation to the city council. The Commission must make findings related to at least two of the seven criteria in section 2—120—620 and must provide a copy to the owner and others.

Section 2—120—700 provides for the city council's consideration of the Commission's recommendation. The city council may hold public hearings and, by ordinance, make the designation pursuant to the section 2—120—620 criteria.

Section 2—120—705 sets the timeline for the city council to consider the Commission's recommendation. If the city council does not take final action within 365 days from the date of recommendation, the landmark designation will be granted. It further provides that the "historical landmark preservation committee" of the city council shall hold timely hearings and report its recommendation to the city council.

Section 2—120—730 provides the process for amendment, rescission, and reconsideration of the designation.

Section 2—120—740 provides that, for property subject to a preliminary recommendation for landmark status or which has been designated a Chicago landmark, no permit for alteration, construction, reconstruction, erection, demolition, relocation, or other work shall be

issued to any applicant by any department without the written approval of the Commission. Sections 2—120—750 to 2—120—825 govern the approval process.

## C. Trial Court Ruling

Plaintiffs alleged in count I that the Ordinance was facially vague in that it did not provide sufficient specificity such that a citizen might know how to conform his or her conduct thereto. The trial court found that the language of the Ordinance was sufficient to guide the Commission in making recommendations as to landmark status and was therefore not unconstitutionally vague. The City's motion to dismiss was granted.

Plaintiffs alleged in count II that the Ordinance violates article I, section 2, of the Illinois Constitution as an unconstitutional delegation of authority to the Commission. The City argued that the Ordinance is not a delegation of authority because the city council, the legislative body, has the final approval of the Commission's recommendation; and if the Commission has been delegated authority, the guidelines are sufficient. The trial court, in granting the City's motion to dismiss, found that the Commission's recommendations of potential landmarks to the city council are advisory, not declaratory; and that the Ordinance provided intelligible standards for the Commission to apply and was thus not vague.

Plaintiffs alleged in count III that section 2—120—705 on its face violates article IV, section 1, of the Illinois Constitution for allowing the Commission to exercise legislative power. The trial court held that the procedures for granting the Commission's recommendation in section 2—120—705 do not result in an improper delegation of legislative authority to the Commission.

Plaintiffs alleged in counts V through XX of their complaint that the application of the Ordinance to their respective properties violated the equal protection clause and the substantive due process clause of the Illinois Constitution. The plaintiffs urged the court to use a "rational relationship test tailored to zoning" rather than the "garden variety" rational basis test in ruling on the City's section 2—615 motion to dismiss. The trial court found that the law in Illinois utilizes the rational basis test and therefore granted defendant's section 2—615 motion to dismiss for failure to state a cause of action.

Plaintiffs now appeal the dismissal of counts I, II, III, and V through XX of their complaint and ask this court to find that they have properly stated a cause of action as to each count and to reverse and remand the case to the trial court.

## II. ANALYSIS

On appeal, plaintiffs allege that the trial court erred in dismissing

certain counts of their complaint because (1) the trial court incorrectly reviewed their claims that the Landmark District designations violated their equal protection and substantive due process rights under the rational basis standard, (2) plaintiffs properly stated a cause of action alleging that certain Ordinance provisions are unconstitutionally vague, and (3) plaintiffs properly stated a cause of action alleging that certain provisions of the Ordinance constitute an unconstitutional delegation of legislative authority to an administrative body.

## A. Standard of Review

A motion to dismiss brought under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)) tests the legal sufficiency of a complaint. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). On review, the inquiry is "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted." *Napleton*, 229 Ill. 2d at 305. Illinois is a fact-pleading jurisdiction, and therefore plaintiffs must allege facts, not mere conclusions, to establish their claim as a viable cause of action. *Napleton*, 229 Ill. 2d at 305. A claim should not be dismissed pursuant to section 2—615 unless "no set of facts can be proved which would entitle the plaintiff to recover." *Napleton*, 229 Ill. 2d at 305. We review the trial court's dismissal of plaintiffs' action *de novo. Napleton*, 229 Ill. 2d at 305.

## B. Count I

In count I of the complaint, plaintiffs sought a declaration that the Ordinance was unconstitutionally vague and ambiguous, in its entirety or in certain parts, in violation of their due process rights under article I, section 2, of the Illinois Constitution. Their challenge was a facial challenge.

Plaintiffs are correct that "[a]n ordinance or statute violates due process guarantees when its terms are so incomplete, vague, indefinite and uncertain that men and women of ordinary intelligence must necessarily guess at their meaning and differ as to their application." *City of Wheaton v. Sandberg*, 215 Ill. App. 3d 220, 227 (1991). "The law is clear that a legislative act which is so vague, indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty, what was intended will be declared void." *Wheaton*, 215 Ill. App. 3d at 227.

Plaintiffs point to numerous provisions within the Ordinance that they claim are vague and arbitrary. They argue that the seven criteria used to guide landmark designation are vague and uncertain due to

the Ordinance's use of phrases like "may or may not," "or other," "value," "important," "critical," "historic," and "significant." Plaintiffs allege that the seven criteria are so rife with vague, ambiguous, and overly broad language that they could conceivably describe any property in any city.

The City, however, responds that such provisions are not vague or arbitrary when viewed in the context of the Ordinance as a whole. Specifically, the City points to the fact that the words "important," "critical," and "significant" have their ordinary and popularly understood meanings, and when viewed in the context of the Ordinance as a whole, these terms provide sufficient guidance to the Commission. The City further argues that the Commission is made up of "professionals in the disciplines of history, architecture, historic architecture, planning, archeology, real estate, historic preservation, or *** persons who have demonstrated special interest, knowledge, or experience in architecture, history, neighborhood preservation, or related disciplines" (see Chicago Municipal Code §2—120—600 (2004)) who are equipped to apply the commonly understood terms that plaintiffs complain of. The City concedes that this provision may not "guarantee" any particular level of expertise of the individual members, the members could nonetheless have valuable experience and knowledge that could benefit the Commission.

The City further maintains that although some of the terms used in the seven criteria set forth in the Ordinance are open to interpretation, the procedures that govern the Commission's recommendations to the city council offer sufficient guidance. The City cites to several cases in other jurisdictions which rejected challenges to historic preservation ordinances with language similar to that at issue here. See *Mayes v. City of Dallas*, 747 F.2d 323 (5th Cir. 1984); *Burke v. City of Charleston*, 893 F. Supp. 589 (D.S.C. 1995); *Park Home v. City of Williamsport*, 545 Pa. 94, 680 A.2d 835 (1996); *Bellevue Shopping Center Associates v. Chase*, 574 A.2d 760 (R.I. 1990); *Figarsky v. Historic District Comm'n*, 171 Conn. 198, 368 A.2d 163 (1976); *Kruse v. Town of Castle Rock*, 192 P.3d 591 (Colo. App. 2008).

We note, however, that most of the cases cited by the City involved factors to be considered when accepting or rejecting a building permit, rather than designating an area or structure for landmark status. Even if such cases dealt directly with landmark ordinances, however, we would nonetheless find that just because certain language was found not to be vague in other jurisdictions does not compel us to so find in this case. Rather, we believe that plaintiffs' allegations are sufficient to state a cause of action. In this case, the pertinent parts of the Ordinance, which outline the seven criteria to be considered in

recommending a district for landmark status, states that any two of the following must be satisfied:

"1. Its value as an example of the architectural, cultural, economic, historic, social, or other aspect of the heritage of the city of Chicago, state of Illinois or the United States;

2. Its location as a site of a significant historic event which may or may not have taken place within or involved the use of any existing improvements;

3. Its identification with a person or persons who significantly contributed to architectural, cultural, economic, historic, social, or other aspect of the development of the city of Chicago, state of Illinois or the United States;

4. Its exemplification of an architectural type or style distinguished by innovation, rarity, uniqueness, or overall quality of design, detail, materials, or craftsmanship;

5. Its identification as the work of an architect, designer, engineer, or builder whose individual work is significant in the history or development of the city of Chicago, state of Illinois, or the United States;

6. Its representation of an architectural, cultural, economic, historic, social, or other theme expressed through distinctive areas, districts, places, buildings, structures, works of art, or other objects that may or may not be contiguous;

7. Its unique location or distinctive physical appearance or presence representing an established and familiar visual feature of a neighborhood, community or the city of Chicago." Chicago Municipal Code §2—120—620 (2000).

We believe that the terms "value," "important," "significant," and "unique" are vague, ambiguous, and overly broad. We are unpersuaded by the City's argument that the Commission members can be well guided by these terms. This is especially true in light of the fact that the qualifications of a Commission member are equally vague. We are uncertain as to what the Ordinance means when it provides that Commission members shall be selected from professionals in disciplines of history, architecture, historic architecture, planning, etc., or persons who have demonstrated a "special interest, knowledge, or experience" in architecture, history, neighborhood preservation, or related disciplines. The City has offered no criteria by which a person of common intelligence may determine from the face of the Ordinance whether a building or district will be deemed to have value or importance, or whether a person will be deemed to have a "special interest" in neighborhood preservation. See *Waterfront Estates Development, Inc. v. City of Palos Hills*, 232 Ill. App. 3d 367, 377 (1992) (the court found that the words "inappropriate" and "incompat-

ible" were vague and ambiguous because defendants failed to provide criteria by which a person of normal intelligence could determine from the face of the ordinance whether a proposed project would be deemed inappropriate or incompatible with nearby property).

We reiterate that our inquiry is merely whether the allegations in plaintiffs' complaint, when construed in the light most favorable to plaintiffs, and taking all well-pleaded facts and reasonable inferences as true, are sufficient to establish a cause of action upon which relief may be granted. See *Napleton*, 229 Ill. 2d at 305. We find that the allegations in plaintiffs' complaint regarding the vagueness of the Ordinance are sufficient to establish a cause of action and should not have been dismissed on the pleadings by the trial court. Accordingly, we reverse the trial court's decision to dismiss count I pursuant to section 2—615.

## C. Count II

In count II of their complaint, plaintiffs challenged the delegation of authority. Specifically, count II alleged that the Ordinance constitutes an impermissible grant of discretionary authority by a legislative body, the city council, to an administrative body, the Commission, without sufficient guidelines. We agree with the trial court that this count is related to count I insofar as both counts challenge the specificity of the language of the Ordinance. See *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 424-25 (1997) ("[t]he question of vagueness and the question of delegation of legislative authority are intertwined (*People v. Gurell*, 98 Ill. 2d at 210) insofar as both address the standards given in the statute to guide the conduct the statute regulates and the administrative body that oversees that conduct").

When a legislative body grants an administrative agency discretionary authority to act, it must provide intelligible standards to guide the agency in the exercise of that authority. *Waterfront Estates*, 232 Ill. App. 3d at 372. In contrast, when final approval of an administrative act rests with the legislative body, there is no delegation problem. *Waterfront Estates*, 232 Ill. App. 3d at 372. When an administrative body acts in a merely advisory capacity, constitutional standards need not be met. *Waterfront Estates*, 232 Ill. App. 3d at 372. "Whether an administrative function is advisory or declaratory is judged by the nature of the act itself; the body's title or characterization of its function is not controlling." *Waterfront Estates*, 232 Ill. App. 3d at 372.

The City argues that the Ordinance does not amount to a delegation of authority because the city council, the legislative body, has the

final approval of the Commission's recommendations. The City further argues that even if the Commission has been delegated authority, the guidelines outlined in the Ordinance are sufficient. We disagree.

### 1. Delegation of Authority

We first address the issue of whether the city council has granted the Commission discretionary authority to act. If final approval of the Commission's recommendation rests with the city council, there is no delegation problem. Plaintiffs argue that because the Commission's recommendations can become final within 365 days without the city council's approval, the Commission has a declaratory function, rather than an advisory one. The City, on the other hand, responds that the Commission acts merely in an advisory capacity. We agree with plaintiffs.

Two sections govern the city council's designation of landmark status. In section 2—120—700, the city council may by ordinance designate a landmark. Additionally, section 2—120—705 provides:

"If the city council does not take final action upon any landmark recommendation submitted by the commission on Chicago landmarks to the city council within 365 days of the date upon which the recommendation is filed with the city council, landmark designation based upon the recommendation of the commission shall be granted. The historic landmark preservation committee of the city council shall hold timely hearings and report its recommendation to the city council." Chicago Municipal Code §2—120—705 (1999).

The trial court found that the "City Council acted by enacting the section 2—120—705 procedures for granting the Commission's recommendation, which also includes hearings by the City Council Landmark Preservation Committee." In support of such proposition, the trial court cited *Quinn v. Donnewald*, 107 Ill. 2d 179 (1985), which, the trial court stated, found that the "General Assembly acts upon the Compensation Review Board's salary increase recommendations by not voting on the recommendations." This is a mischaracterization of the case.

In *Donnewald*, the plaintiffs contended that the Compensation Review Act (Ill. Rev. Stat., 1984 Supp., ch. 63, pars. 901 through 906) was unconstitutional because it impermissibly delegated to a board the power to determine the salaries of the state officials affected. Plaintiffs argued that the Illinois Constitution required the salaries of legislators, judges, and executive officers to be provided or established "by law." *Donnewald*, 107 Ill. 2d at 186. Plaintiffs contended that the Illinois Constitution therefore required the legislature itself to set the salaries of such persons and prohibited the delegation of such

responsibility to the board. The *Donnewald* court, however, found that the Act establishing the procedure for providing salaries was enacted through the law-making process, by the vote of a majority of both houses of the General Assembly and following presentment to the Governor for his action, and therefore satisfied the constitutional directive that salaries be provided or established by law. *Donnewald*, 107 Ill. 2d at 187. We find this case to be inapposite to the case at bar.

■ In the instant case, the Ordinance provides that the Commission, an administrative body, can recommend potential buildings, or in this case districts, to the city council, a legislative body; but if the city council does not act, in either approval or disapproval of the recommendation, the recommendation becomes law. The City appears to make the argument that the Commission's role remains advisory because the council, by its inaction, is essentially approving the recommendation and therefore making the final decision regarding landmark status in Chicago. We do not agree.

Rather, we agree with the plaintiffs that *Waterfront Estates* is more instructive in the case at bar. In *Waterfront Estates*, the court found that the appearance commission's recommendation was declaratory. *Waterfront Estates*, 232 Ill. App. 3d at 376-77. The court found that the legislative body, the city council, did not have the final say because the mayor, who is not a legislative body, also was involved in the final approval of the appearance commission's recommendation. *Waterfront Estates*, 232 Ill. App. 3d at 376-77. Additionally, the court found that, looking at the ordinance as a whole, neither the city council nor the mayor was actually required to review the commission's recommendations, and therefore the recommendation of the appearance commission was in reality a final decision. *Waterfront Estates*, 232 Ill. App. 3d at 377.

Similarly here, under the Ordinance the Commission can make a recommendation to the city council and the city council is not required to review the Commission's recommendations before they become final. Although the Ordinance provides that the historical landmark preservation committee of the city council shall hold timely hearings and report its recommendations to the city council, we find no basis to conclude that this language mandates the city council to review the recommendations of the Commission or those of the landmark preservation committee. As such, we find that the Commission performs a declaratory function.

We note, however, that even if we were to have found that the Commission's function was merely advisory, the seven criteria outlined in the Ordinance to assist the Commission in recommending buildings or districts for landmark status remains unconstitutionally vague, as discussed in the previous section.

## 2. Intelligible Standards

Finding that the Commission has been delegated authority by the city council, we must now turn to whether the guidelines the Ordinance provides to the Commission to determine landmark status are intelligible. See *Waterfront Estates*, 232 Ill. App. 3d at 372 (when a legislative body grants an administrative agency discretionary authority to act, it must provide intelligible standards to guide the agency in the exercise of that authority). When interpreting an ordinance to determine whether there are intelligible standards to guide an administrative body, "[a]lthough 'we can never expect mathematical certainty from our language' (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300), an ordinance which is so vague that persons of common intelligence must necessarily guess at its meaning is unconstitutional." *Waterfront Estates*, 232 Ill. App. 3d at 376-77.

As stated in the previous section, we find that the seven criteria outlined in the Ordinance are unconstitutionally vague and therefore do not adequately provide intelligible standards by which to guide the Commission. Accordingly, we find that the plaintiffs adequately stated a cause of action in count II of their complaint when they alleged that the Ordinance permitted an improper delegation of authority.

## D. Count III

■ In count III of their complaint, plaintiffs claimed that section 2—120—705 of the Ordinance is a facially unconstitutional delegation of legislative authority in violation of article IV, section 1, of the Illinois Constitution. Plaintiffs argued that the Commission's recommendation is allowed to be granted without city council action if the city council does not take final action in 365 days. For the reasons stated above in regard to count II, we find that plaintiffs stated a cause of action sufficient to withstand the City's section 2—615 motion to dismiss.

## E. Counts V through XX

Plaintiffs' final counts of the complaint claimed that the designation of Arlington-Deming District and the East Village District as landmark districts, and the inclusion of their respective properties within those districts, was violative of their substantive due process and equal protection rights. We decline to address this issue before the trial court makes a finding on whether the Ordinance is unconstitutionally vague. If it is found to be vague and thus invalid, then the designation of Arlington-Deming District and Elk Grove Village District as landmark districts is invalid, and thus the issue of whether such designation was violative of substantive due process and equal protection rights would be moot.

## III. CONCLUSION

Plaintiffs properly stated a cause of action for vagueness, sufficient to overcome a section 2—615 motion to dismiss, and thus we reverse the trial court's dismissal of plaintiffs' complaint and remand the case to the trial court for further proceedings.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand.

Reversed and remanded.

O'MARA FROSSARD and TOOMIN, JJ., concur.